**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KENNETH J. TAGGART** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 10-cv-00843** |
| | : | |
| **WELLS FARGO HOME** | : | |
| **MORTGAGE, INC., et al.** | : | |
| **Defendants** | : | |

<u>MEMORANDUM OPINION</u>

**Stengel, J.**                                                    **September 27, 2010**

Kenneth Taggart filed this complaint alleging various violations of the Real Estate

Settlement & Procedures Act, the Truth in Lending Act, the Pennsylvania Unfair Trade

Practices & Consumer Protection Law, the Fair Credit Reporting Act, and the Fair Debt

Collection Practices Act.  In addition, he alleges breach of contract and breach of

fiduciary duty claims.  Wells Fargo Home Mortgage Inc. filed this motion to dismiss Mr.

Taggart's complaint.  For the reasons set forth below, I will grant Wells Fargo's motion.


**I.**     <u>**Background**</u>

In December, 2008, Kenneth Taggart applied to refinance his mortgage loan on

property located at 709 Schwab Road, Hatfield, Pennsylvania.[1]  Eagle Nationwide

Mortgage Company acted as a broker and American Partners Bank funded the loan.

Complaint at ¶¶ 8-9.  The mortgage loan closed on December 16, 2008.  Wells Fargo now

---

[1] Complaint at ¶ 7, <u>Taggart v. Wells Fargo Home Mortgage, Inc.</u>, No. 10-843 (E.D. Pa.
filed March 1, 2010).

services the loan, which is owned by a securitized trust.  Complaint at ¶ 11.

At the time the mortgage loan closed, Mr. Taggart received the following documents:  a U.S. Department of Housing & Urban Development settlement statement and a signed certification to addendum to HUD-1 settlement statement (acknowledging receipt of the HUD-1 settlement statement); a truth in lending disclosure statement; a good faith estimate of settlement charges; fee information from his mortgage broker; and a notice of right to cancel, which he signed.  See Complaint at Exh. A1-A2, A5-A9; Memorandum of Law in Support of Motion to Dismiss Complaint at Exh. A, Taggart v. Wells Fargo Home Mortg., Inc., No. 10-843 (E.D. Pa. filed June 4, 2010).

On December 16, 2009, Mr. Taggart sent a letter to Wells Fargo alleging violations of the Truth In Lending Act and the Real Estate Settlement & Procedures Act, and seeking to rescind the loan.  On December 17, 2009, Mr. Taggart sent a letter to Wells Fargo, stating it was a "qualified written request" and seeking the disclosure of various mortgage loan documents.  See Complaint at Exh. A10-14.

The complaint alleges various violations of RESPA, TILA, the Pennsylvania Unfair Trade Practices & Consumer Protection Law, the Fair Credit Reporting Act, and the Fair Debt Collection Practices Act.  In addition, the complaint raises breach of contract and breach of fiduciary duty claims.[2]

---

[2] Mr. Taggart also has filed lawsuits alleging similar violations regarding other properties he owns.  See Memorandum and Order, Taggart v. Norwest Mortg., Inc., No. 09-1281, 2010 WL 114946 (E.D. Pa. filed Jan. 11, 2010); Taggart v. Chase Bank USA, N.A., No. 09-1533, 2009 WL 1674419 (E.D. Pa. filed June 15, 2009) aff'd 353 Fed. Appx. 731 (3d Cir. Nov. 27, 2009);

## II.     **Standard**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The factual allegations must be sufficient to make the claim for relief more than just speculative.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  Id.; see also D.P. Enters. v. Bucks Cnty. Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim.  Conley, 355 U.S. at 47.  Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  Id.  The "complaint must allege facts suggestive of [the proscribed] conduct."  Twombly, 550 U.S. at 564.  Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true.  See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Se. Pa. Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995).  The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that

---

Taggart v. Greenpoint Mortg. Funding, Inc., No. 09-03416 (E.D. Pa. filed July 29, 2009) (consolidated with No. 09-3417); Taggart v. BAC Home Loans Servicing, LP, No. 10-01223 (E.D. Pa. filed March 19, 2010).

discovery will reveal evidence of" those elements.  <u>Phillips v. Cnty. of Allegheny</u>, 515

F.3d 224, 234 (3d Cir. 2008) (quoting <u>Twombly</u>, 550 U.S. at 556).


### III.  <u>Discussion</u>

### A.  **The Real Estate Settlement and Procedures Act (RESPA)**

### 1.  **Whether the Mortgage Loan was a Business-Purpose Loan**

Counts 1-9, 19, and 38 of Mr. Taggart's complaint allege violations of RESPA.

RESPA "does not apply to credit transactions involving extensions of credit (1) primarily

for business, commercial, or agricultural purposes . . . ."  12 U.S.C. § 2606(a).  The Code

of Federal Regulations provides that "RESPA and [Part 3500] apply to all federally

related mortgage loans, except for the exemptions provided in paragraph (b) of this

section."  Paragraph (b) provides an exemption for, among other items, "[a]n extension of

credit primarily for a business, commercial, or agricultural purpose, as defined by

Regulation Z, 12 CFR 226.3(a)(1).  Persons may rely on Regulation Z in determining

whether the exemption applies."  24 C.F.R. § 3500.5(b).  Regulation Z exempts several

categories of lending transactions, including "[a]n extension of credit primarily for a

business, commercial or agricultural purpose."  12 C.F.R. § 226.3(a).  The Truth in

Lending Official Staff Commentary provides:

> Credit extended to acquire, improve, or maintain rental property (regardless of
> the number of housing units) that is not owner-occupied is deemed to be for
> business purposes.  This includes, for example, the acquisition of a warehouse
> that will be leased or a single-family house that will be rented to another

person to live in.[3]

46 Fed. Reg. 50288, 50297 (Oct. 9, 1981) (as amended 75 Fed. Reg. 7658 (Feb. 22, 2010)).

Wells Fargo argues the mortgage loan is not covered by RESPA because the Hatfield property was a rental property, not owner-occupied.  In its reply, Wells Fargo attached two mortgage applications.  In 2006, Mr. Taggart applied for a mortgage for property in Holland, Pennsylvania.  On this application, Mr. Taggart listed his current address as the property in Holland, Pennsylvania and listed the Hatfield property as a rental property.

In 2008, when he submitted an application to refinance the Hatfield property, Mr. Taggart listed the Hatfield property as his primary residence.   The application lists the Holland property as being owned by Mr. Taggart, but does not indicate it was rented. When he filed this lawsuit in 2010, he listed the Holland address as his primary address

---

[3]  Mr. Taggart cites the Truth in Lending Comptroller's Handbook, which states to determine whether the loan is for a business purpose, creditors should consider, among other factors, "[t]he relative amount of income derived from the property acquired by the loan proceeds. The less the income derived from the acquired property relative to the borrower's total income, the more likely the loan will have a consumer purpose. For example, if the borrower has an annual salary of $100,000 and receives about $500 in annual dividends from the acquired property, that would indicate a consumer purpose." p.7-8.  This section parallels the exemption for extending credit to finance an acquisition, which lists factors used "[i]n determining whether credit to finance an acquisition–such as securities, antiquities, or art–is primarily for business or commercial purposes."  46 Fed. Reg. 50288-01, 50297 (discussing exempt transaction under § 226.3).

The "Coverage Considerations Under Regulation Z" flow chart in the Handbook states "[c]redit extended to acquire or improve rental property that is not owner-occupied is considered business credit."  Comptrollers Handbook at 97.

and the address to which he would like correspondence to be sent.  In his response to

Wells Fargo's motion to dismiss, he states he now rents the Hatfield property and lives at

the Holland property.[4]  He maintains, however, that he resided at the Hatfield property in

2008.

Because Mr. Taggart alleges the Hatfield property was his principal dwelling when

he applied for the mortgage, the motion to dismiss will not be granted on this ground.


### 2.    Statute of Limitations

In counts 1, 2, 5, 6, 7, 8, and 9, Mr. Taggart alleges violations of RESPA for

failing to disclose various fees.  Count 1 alleges Wells Fargo charged undisclosed fees to

Mr. Taggart including a $375 broker processing fee.  Count 2 alleges Wells Fargo failed

to disclose all fees on the settlement sheet.  Count 5 alleges Wells Fargo charged an

undisclosed predatory lending fee of $4,100.40 for unearned fees.  Count 6 alleges Wells

Fargo charged an undisclosed $486.44 interest fee and other unearned fees.  Count 8

alleges Wells Fargo charged an undisclosed $695.00 commitment fee and other unearned

fees.  Count 9 alleges Wells Fargo charged broker fees and yield spread premiums in

excess of normal market fees and engaged in predatory lending by charging higher than

current market rates for the loan.

RESPA provides: "Any action pursuant to the provisions of section 2605, 2607, or

---

[4]  On the letters written to Wells Fargo on December 16, 2009 and December 17, 2009, Mr. Taggart listed his return address as "45 Heron Road, Holland, Pa. 18966."

2608 of this title may be brought in the United States district court . . . within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation . . . ." 12 U.S.C. § 2614.

Section 2607 provides a prohibition against kickbacks and unearned fees and applies to counts 1, 2, 5, 6, 8, and 9. To raise a private cause of action pursuant to 2607 challenging unearned fees, a plaintiff must file a lawsuit within one year of "the date of the occurrence of the violation." The date of the violation is the date of closing. See Morilus v. Countrywide Home Loans, Inc., 651 F. Supp. 2d 292, 306 (E.D. Pa. 2008) (statute required an action for kickbacks to be brought within one year of the date of the occurrence of the violation, which was the date of the closing).

Mr. Taggart's mortgage loan closed on December 16, 2008 and the funds were disbursed on December 22, 2008. This was more than one-year before the filing of the complaint on March 1, 2010. On December 16, 2008, Mr. Taggart signed a certification addendum to HUD-1 settlement statement, which stated:

> I have carefully reviewed the HUD-1 settlement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Memorandum of Law in Support of Motion to Dismiss Complaint at Exh. A.[5] Therefore,

---

[5] I may consider the documents attached to Wells Fargo's motion to dismiss and reply even though they were not attached to the complaint because the documents are "undisputedly authentic" and Mr. Taggart's claims are based on the documents. See Miller v. Clinton Cnty.,

because the loan closed on December 16, 2008, the statute of limitations bars counts 1, 2, 5, 6, 8, and 9.

Mr. Taggart asserts the statute of limitations should be equitably tolled. Equitable tolling may apply: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994) (citing Sch. Dist. of City of Allentown v. Marshall, 657 F.2d 16, 19-20 (3d Cir. 1981)). "[T]o warrant equitable tolling, 'mere silence or nondisclosure is not enough to trigger estoppel[;] the adversary must commit some affirmative independent act of concealment upon which the plaintiffs justifiably rely in order to toll the statute." Garczynski v. Countrywide Home Loans, Inc., 656 F. Supp. 2d 505, 516 (E.D. Pa. 2009) (citing Marple v. Countrywide Fin. Corp., No. 07-4402, 2008 U.S. Dist. LEXIS 37705, at *8 (D.N.J. May 7, 2008)).

Mr. Taggart maintains Wells Fargo failed to disclose rates and forms. However, the Department of Housing and Urban Development Settlement Statement, attached to Mr. Taggart's complaint, lists a $695.00 commitment fee paid to American Partners

---

544 F.3d 542, 550 (3d Cir. 2008) ("'[a] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiffs claim's are based on the document") (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). To consider the documents, the motion does not need to be converted into a motion for summary judgment. Id.

Bank, a $375.00 processing fee paid to Eagle Nationwide Mortgage, and a $4,100.40 yield spread premium, which was paid outside of closing. Complaint at Exh. A8-A9. Mr. Taggart signed the certification addendum to HUD-1 settlement statement, acknowledging he received the HUD-1 settlement statement. Mr. Taggart fails to allege an affirmative act of concealment on the part of Wells Fargo which would justify tolling the statute of limitations.

I will grant Wells Fargo's motion to dismiss counts 1, 5, 6, 7, 8, and 9 because the claims are barred by the statute of limitations.


       **3.**       **No Private Right of Action**

Counts 3, 4, and 7 raise claims pursuant to 28 U.S.C. § 2603(b).[6] Count 3 alleges Wells Fargo failed to provide a good faith estimate prior to closing; count 4 alleges Wells Fargo failed to provide the mortgage documents and HUD-1 statement at least 24 hours

---

[6] 12 U.S.C. § 2603(b) provided:

The form prescribed under this section shall be completed and made available for inspection by the borrower at or before settlement by the person conducting the settlement, except that (1) the Secretary may exempt from the requirements of this section settlements occurring in localities where the final settlement statement is not customarily provided at or before the date of settlement, or settlements where such requirements are impractical and (2) the borrower may, in accordance with regulations of the Secretary, waive his right to have the form made available at such time. Upon the request of the borrower to inspect the form prescribed under this section during the business day immediately preceding the day of settlement, the person who will conduct the settlement shall permit the borrower to inspect those items which are known to such person during such preceding day.

prior to settlement; and count 7 alleges Wells Fargo failed to provide all RESPA disclosures three days after his application.

12 U.S.C. § 2614 provides "[a]ny action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction . . . ." The text of RESPA, therefore, does not provide a private right of action for claims under § 2603. In addition, courts have found no private right of action should be implied. See Taggart v. Norwest Mortgage, Inc., 2010 WL 114946, at *2 (E.D. Pa. Jan. 11, 2010) (finding a private right of action should not be implied for §§ 2603-2604); Loften v. Diolosa, No. 05-1193, 2008 WL 2994823, at *9 n.10 (M.D. Pa. July 31, 2008) (stating "§ 2603 does not explicitly provide for a private cause of action and courts have determined that no implicit cause of action exists under § 2603"); see also Brophy v. Chase Manhattan Mortg. Co., 947 F. Supp. 879, 882 (E.D. Pa. 1996) (finding RESPA did not provide a private right of action for § 2604).

Accordingly, I will grant Wells Fargo's motion to dismiss counts 3, 4, and 7.[7]

### 4. RESPA Claims Regarding Qualified Written Requests

Claim 19 alleges Wells Fargo failed to respond to a qualified written request dated December 17, 2009. Claim 38 alleged Wells Fargo failed to respond when Mr. Taggart disputed the payment history, payments credited, and payment amounts. Claim 38

---

[7] In addition, as an alternate ground for dismissing count 2, if count 2 is an attempt to raise a claim pursuant to section 2603(b), it is dismissed because no private right of action exists.

references Mr. Taggart's letters of December 16, 2009 and December 17, 2009.

12 U.S.C. § 2605(e) provides:

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

A qualified written request is defined as:

[A] qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
(I) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

Wells Fargo argues the December 16, 2010 letter and December 17, 2010 letter are not qualified written requests. On December 16, 2010, Mr. Taggart wrote a letter to Wells Fargo stating:

In completing a review of my loan, it has become apparent that there have been Truth-in-Lending violations and Real Estate Settlement & Procedures Act violations on my loan.

I would like to rescind the loan per my rights under the "Truth in Lending Act." Please refund all interest and fees paid on my loan. Also release the lien/security interest on my loan. You may send monies and release to my home address; [sic] 45 heron [sic] Rd., Holland, Pa. 18966.

Complaint at Exh. A at A10.

11

On December 17, 2009, Mr. Taggart wrote a second letter to Wells Fargo stating:

This is a qualified written request for disclosures on the loan referenced above. Please provide copies of the required disclosures . . .

Please provide all of the documents as I need them for my file. It is my understanding that these documents are required to be kept on file for 5 years by law. Please send all information to: 45 Heron Rd., Holland, Pa. 18966. Your cooperation is greatly appreciated.

Complaint at Exh. A at A13. The December 17, 2009 letter requested various documents, including, among other items, a good faith estimate, disclosures concerning servicing transfers, the HUD-1 settlement statement, initial escrow account statement, final disclosure statement and any re-disclosure statements, and notice of right of recision.

Mr. Taggart's December 16, 2009 letter requesting rescission did not request information for the servicing of the loan. Therefore, the December 16, 2009 letter was not a qualified written request. See Taylor v. Nelson, No. 02-6558, 2006 WL 266052, at *14 (E.D. Pa. Jan. 31, 2006) (letter requesting rescission of a loan did not request information relating to the loan and was not a qualified written request).

The December 17, 2010 letter also is not a qualified written request. The requested documents deal with the origination of the loan, not the servicing of the loan. "Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the

loan." 12 U.S.C. § 2605(i)(3). Although the letter did state it was a "qualified written request," the documents deal with origination of the loan, not servicing the loan. The letter, therefore, is not a qualified written request.

Because the December 16, 2009 and December 17, 2009 letters were not qualified written requests pursuant to RESPA, I will grant Wells Fargo's motion to dismiss counts 19 and 38.

### B.     Truth In Lending Act

Counts 10 through 16 and count 18 allege various TILA violations. Count 10 alleges Wells Fargo failed to provide three copies of the "Right to Cancel" at closing. Count 11 alleges Wells Fargo "failed to make all [TILA] and [RESPA] disclosures." Count 12 alleges Wells Fargo failed to disclose the payment schedule as required by Regulation Z. Count 13 alleges Wells Fargo failed to disclose the total payments, as required under 12 C.F.R. 226.18(g)-(h). Count 14 alleges defendants failed to provide the correct annual percentage rate in the closing documents. Count 15 alleges Mr. Taggart would like the right to "quiet title" and rescind the loan per the TILA. Count 16 seeks damages for Wells Fargo's refusal to rescind the loan after notification by Mr. Taggart. Count 18 alleges Wells Fargo did not disclose the loan terms when it changed the rate or payment amount.

### 1.     Whether the Hatfield Property Refinanced Mortgage Loan was for Business Purposes

Similar to RESPA, TILA exempts extensions of credit for business or commercial purposes from its scope.  15 U.S.C. § 1603(1); 12 C.F.R. § 226.3(a).  Wells Fargo argues the Hatfield property was not Mr. Taggart's principal dwelling.  Therefore, TILA does not apply because the refinanced mortgage loan was for business or commercial purposes.

As with the claims under RESPA, because Mr. Taggart alleges he resided at the Hatfield property in December 2008, when he refinanced the mortgage, I will not grant the motion to dismiss on this ground.

### 2.     Notice of Right to Cancel

Count 10 alleges Wells Fargo failed to provide three copies of the right to rescind at the closing.

12 C.F.R. § 226.15(b) states "[i]n any transaction or occurrence subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind."  Therefore, only two copies of the notice of the right to rescind must be provided.

On December 16, 2008, Mr. Taggart signed a notice of the right to cancel. See Motion to Dismiss at Exh. B.  The notice informed him he had a right under federal law to cancel the transaction within three business days of the closing, which occurred on December 16, 2008.  In addition, he acknowledged receipt of two copies of the notice of

the right to cancel.  Id.

Because Mr. Taggart signed a notice of the right to cancel form, and
acknowledged that he received two copies of the form, I will dismiss count 10.


### 3.    Disclosures

Count 11 states Wells Fargo "failed to make all . . . disclosures before
consummation."  It does not, however, state which disclosures Wells Fargo failed to
make.  I will dismiss this count as insufficiently pled.


### 4.    Payment Schedule

Count 12 alleges Wells Fargo failed to disclose the payment schedule.  12 C.F.R. §
226.18(g) provides:

> For each transaction, the creditor shall disclose the following information as
> applicable:
>
> The number, amounts, and timing of payments scheduled to repay the
> obligation.
>
> (1) In a demand obligation with no alternate maturity date, the creditor may
> comply with this paragraph by disclosing the due dates or payment periods of
> any scheduled interest payments for the first year.
>
> (2) In a transaction in which a series of payments varies because a finance
> charge is applied to the unpaid principal balance, the creditor may comply with
> this paragraph by disclosing the following information:
>     (i) The dollar amounts of the largest and smallest payments in the
> series.
>     (ii) A reference to the variations in the other payments in the series.

The Truth in Lending Disclosure Statement attached to Mr. Taggart's complaint at A-1 states there will be 359 payments of $1,716.03, beginning on February 1, 2009, and 1 payment of $1,719.61 on January 1, 2039.[8]

I will dismiss count 12 because Wells Fargo disclosed to Mr. Taggart the payment schedule.

### 5. Total Payments

Count 13 alleges Wells Fargo failed to disclose the total payments, as required under 12 C.F.R. 226.18(g)-(h). The truth in lending disclosure statement, however, has a box labeled "Total of Payments," which is described as "[t]he amount you will have paid after you have made all payments as scheduled." The amount in the box was $617,774.38. See Complaint at Exh. A1.

Because the total payment amount was disclosed, I will grant Wells Fargo's motion to dismiss count 13.

### 6. Interest Rate

Count 14 alleges defendants failed to provide the correct annual percentage rate in the closing documents. Count 18 alleges Wells Fargo did not disclose the loan terms

---

[8] Mr. Taggart did not sign this copy, but did attach it to his complaint.

when it changed the rate or payment amount.

Mr. Taggart does not allege when the interest rate or payments amount changed.[9]

Because the complaint does not allege when, or by how much, the interest rate and

payment amount increased, I will grant Wells Fargo's motion to dismiss counts 14 and 18

as insufficiently pled.


### 7. Right to Rescind and Other Disclosures

Count 15 alleges Mr. Taggart would like the right to "quiet title" and rescind the

loan per the TILA.  Count 16 seeks damages for Wells Fargo's refusal to rescind the loan

after notification by Mr. Taggart.

Pursuant to 12 C.F.R. § 226.23, "[t]he consumer may exercise the right to rescind

until midnight of the third business day following consummation, delivery of the notice

required by paragraph (b) of this section, or delivery of all material disclosures,

whichever occurs last."  If the consumer did not receive the notice or material disclosures,

however, "the right to rescind shall expire 3 years after consummation, upon transfer of

all the consumer's interest in the property, or upon sale of the property, whichever occurs

---

[9]  It appears Mr. Taggart may be arguing that, because of the premium yield spread, the interest rate was different than the original rate and the payment amounts were higher.  Although the forms from Eagle Nationwide did not check the box which listed the $4,100 premium yield fee, the $4,100 fee was listed on the HUD-1 settlement form.  Mr. Taggart signed the form acknowledging receipt of the HUD-1 settlement sheet, which listed the $4,100 fee.  In addition, information from Eagle Nationwide explained that if a yield spread premium was charged, "[y]our lender will then pay your mortgage broker on your behalf in exchange for you paying a higher interest rate on your loan."  Complaint at Exh. A7.

first." Material disclosures include "the annual percentage rate, the finance charge, the amount financed, the total payments, the payment schedule, and the disclosures and limitations referred to in § 226.32(c) and (d)." 12 C.F.R. § 226.23(a).

Mr. Taggart signed the notice of the right to cancel on December 16, 2008, and it appears all material disclosures were made at that time. The disclosures Mr. Taggart alleges Wells Fargo failed to disclose are contained on the forms attached to the complaint. Therefore, his right to rescind the contract expired in December 2008. I will grant the motion to dismiss claims 15 and 16.

### C.  Breach of Contract

Count 17 alleges a breach of contract claim alleging Wells Fargo hid, omitted, and concealed the "true terms of loan in written documents."

To "maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." Hart v. Arnold, 884 A.2d 316, 332 (Pa. Super. Ct. 2005) (citing Gorski v. Smith, 812 A.2d 683 (Pa. Super. Ct. 2002)). Mr. Taggart fails to sufficiently allege any duty imposed by a contract or how Wells Fargo breached that duty.

I will grant Wells Fargo's motion to dismiss count 17 because Mr. Taggart failed to sufficiently allege a breach of contract claim.

**D.     Breach of Fiduciary Duty**

Counts 20 through 22 allege Wells Fargo breached a fiduciary duty owed to Mr.

Taggart.  Count 20 alleges Wells Fargo breached this duty because it suggested Mr.

Taggart completely refinance instead of obtaining an equity loan or equity line.  He

appears to allege that after he refinanced, he paid a higher rate than the original mortgage.

Count 21 alleges Wells Fargo had a fiduciary duty to obtain the best loan for Mr.

Taggart and alleges Wells Fargo "engaged in willful misrepresentation and disregard as to

his financial status and violated the Home Owners Equity Protection Act."[10]

Count 22 alleges Wells Fargo breached its fiduciary duty to obtain the best loan for

the plaintiff and maintains Wells Fargo "engaged in 'Flipping' by persuading [him] to

refinance when it did not make any sense."

Pursuant to Pennsylvania law, a lender normally does not have a fiduciary duty to a

borrower.  See Fed. Land Bank of Balt. v. Fetner, 410 A.2d 344, 348 (Pa. Super. Ct.

1979) (citing Grace et ux. v. Moll, 132 A. 171 (Pa. 1926) (noting the borrower-lender

relationship normally "does not create a confidential relationship"); accord Taggart, 2010

_____

[10]  HOEPA was enacted as an amendment to TILA.  In re Community Bank of Northern Virginia, 418 F.3d 277, 304 (3d Cir. 2005).  It "creates a special class of regulated loans that are made at higher interest rates or with excessive costs and fees."  Id.  "HOEPA protections apply if a loan meets one of two high-cost loan triggers: (1) the annual percentage rate ("APR") exceeds by eight percent the yield on Treasury securities of comparable maturity for first-lien loans, or above ten percent for subordinate-lien loans; or (2) the total of all the loan's points and fees exceed eight percent of the loan total or $400 (adjusted for inflation), whichever is greater."  Id. (citing 15 U.S.C. §§ 1602(aa)(1), (3); 12 C.F.R. §§ 226.32(a)(1)(i)(ii)).  HOEPA does not apply here.

WL 114946, at *8; <u>Wawrzynek v. Statprobe, Inc.</u>, No. 05-1342, 2007 WL 3146792, at

*12 (E.D. Pa. Oct. 25, 2007).  A lender owes a duty to the borrower only if a confidential

relationship is created whereby the "creditor 'gains substantial control over the debtor's

business affairs.'"  <u>I & S Assoc. Trust v. LaSalle Nat'l Bank</u>, No. 99-4956, 2001 WL

1143319, at *7 (E.D Pa. Sept. 27, 2001) (quoting <u>Blue Line Coal Co. v. Equibank</u>, 683 F.

Supp. 493, 496 (E.D. Pa. 1988)); <u>see also</u> <u>Gaines v. Krawczyk</u>, 354 F. Supp. 2d 573, 586

(W.D. Pa. 2004) (a fiduciary relationship "does not arise in a typical transactional setting

unless 'one party surrenders substantial control over some portion of its affairs to the

other'").

Mr. Taggart fails to allege Wells Fargo gained "substantial control" over his

financial affairs.  He alleges nothing more than a lender-borrower relationship, one in

which advice may have been given.  This is insufficient to create a confidential

relationship such that Wells Fargo would owe a fiduciary duty to Mr. Taggart.

I will grant Wells Fargo's motion to dismiss counts 20 through 22.


**E.     The Pennsylvania Unfair Trade Practices and Consumer Protection
        Law**

Counts 23 through 36 allege violations of the Pennsylvania Unfair Trade Practices

and Consumer Protection Law.  Count 23 alleges Wells Fargo failed to provide and

disclose all terms of the loan in violation of the UTPCPL.  Count 24 alleges Wells Fargo

failed to disclose all fees and costs of the loan in violation of the UTPCPL.  Count 25

alleges Wells Fargo failed to provide and disclose all fees and costs of the loan at least

three days prior to the closing of the loan in violation of the UTPCPL.  Count 26 alleges

Wells Fargo failed to provide closing documents and the HUD-1 settlement statement at

least 24 hours prior to closing of the loan in violation of the UTPCPL.  Count 27 alleges

Wells Fargo charged Mr. Taggart broker fees and yield spread premiums in excess of

normal market fees and engaged in predatory lending by charging Mr. Taggart higher

than current market rates for the loan in violation of the UTPCPL.  Count 28 alleges

Wells Fargo failed to disclose the payment schedule in violation of the UTPCPL.  Count

29 alleges Wells Fargo failed to disclose the total payments by using the term "total

payments" and a descriptive analysis in violation of the UTPCPL.  Count 30 alleges

Wells Fargo failed to follow the Fair Credit Reporting Act, which is a violation of the

UTPCPL.  Count 31 alleges Wells Fargo failed to disclose the payment schedule in

violation of the UTPCPL.  Count 32 alleges Wells Fargo failed to respond to qualified

written requests in violation of RESPA, which constitutes a violation of the UTPCPL.

Count 33 alleges Wells Fargo failed to provide proper disclosures concerning when

payments were due, in violation of the UTPCPL.  Count 34 alleges Wells Fargo failed to

disclose the loan terms throughout the loan when the rate or payment amount is changed

in violation of the UTPCPL.  Count 35 and count 36 allege Wells Fargo breached a

fiduciary duty owed to Mr. Taggart to obtain the best loan in violation of the UTPCPL.

Most of these alleged violations of the UTPCPL are "piggy-back" claims, alleging

claims identical to the RESPA and TILA violations raised in the complaint. Although the complaint does not state which provision of the UTPCPL applies, Mr. Taggart likely attempts to raise claims under the UTPCPL's catch-all provision, which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi). To establish a cause of action under this catch-all provision, a plaintiff must prove the elements of common-law fraud. See Tran v. Metro. Life Ins. Co., 408 F.3d 130, 140-41 (3d Cir. 2005) (predicting the Pennsylvania Supreme Court will find justifiable reliance is required to establish a UTPCPL claim); Toy v. Metropo. Life Ins. Co., 863 A.2d 1, 10 (Pa. Super. Ct. 2004) (UTPCPL claims must establish the common law elements of fraud); Booze v. Allstate Ins. Co., 750 A.2d 877, 880 (Pa. Super. Ct. 2000) ("[T]o state a claim under the catchall provision of the [UTPCPL], a plaintiff must prove the elements of common law fraud"). "[T]o establish common law fraud, a plaintiff must prove: (1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result." Ross v. Foremost Ins. Co., 998 A.2d 648, 654 (Pa. Super. Ct. 2010) (quoting Colaizzi v. Beck, 895 A.2d 36, 39 (Pa. Super. Ct. 2006)).

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The purpose of Rule 9(b) is to "place the defendants on notice of the

precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).

Mr. Taggart does not allege what misrepresentation Wells Fargo made, does not allege sufficient intent, and does not allege he justifiably relied on any misrepresentation. I will grant Wells Fargo's motion to dismiss counts 23 through 36.


### G.    Fair Credit and Reporting Act

Count 37 alleges Wells Fargo failed to follow the Fair Credit Reporting Act procedure when Mr. Taggart disputed the payment history, payments credited, and payment amount.

"Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 191 (3d. Cir.2009) (quoting Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007)). Although primarily aimed at credit reporting agencies, the FCRA places obligations on creditors that furnish credit information to credit reporting agencies. See, 15 U.S.C. § 1681s-2(a) ("Duty of furnishers of information to provide accurate information"). "The FCRA designates these persons as 'furnishers of credit information.'" Cosmos v. Am. Express Centurion Bank, No. 07-6099, 2010 WL 2516468, at *7 (D.N.J. June 14, 2010) (citing Evantash v. G.E. Capital

<u>Mortg. Servs.</u>, No. 02-1188, 2003 WL 22844198, * 1 n. 1 (E.D.Pa. Nov.25, 2003)).

Section 1681s-2(b)[11] of the FCRA provides that: "[a]fter receiving notice pursuant to section 1681(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall: (A) conduct an investigation . . . (B) review all relevant information provided by the consumer reporting agency . . . (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies . . . ." Section 1681i(2)(A) provides "[b]efore the expiration of the 5-business day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer . . . , the agency shall provide notification of the dispute to any person who provided any item of information in dispute . . . ." Therefore, pursuant to § 1681s-2(b) "a plaintiff must prove (1) that he notified a credit reporting agency of the dispute under § 1681i, (2) that the credit reporting agency notified the party who furnished the information under § 1681i(a)(2), and (3) that the party who furnished the information failed to investigate or rectify the disputed charged." <u>Taggart</u>, 2010 WL 114946, at *9.

Mr. Taggart alleges he disputed the accuracy of the mortgage loan information

---

[11] Section 1681s-2(a) provides a duty on furnishers of information to provide accurate information. Section 1681s-2(a), however, does not provide a private cause of action. <u>See</u> 15 U.S.C. § 1681s-2(d) (providing that "[s]ubsection (a) of this section shall be enforced exclusively under section 1681i of this title by the Federal agencies and officials and the State officials identified in that section").

with Wells Fargo. He does not allege he disputed the accuracy of the information with a consumer reporting agency, who then sent notice to Wells Fargo. Therefore, I will grant Wells Fargo's motion to dismiss count 37.

### H. Fair Debt Collection Practices Act

Counts 39 and 40 allege violations of the Fair Debt Collection Practices Act. Mr. Taggart alleges Wells Fargo failed to report to the Credit Bureau that his loan was in dispute, failed to make a "consumer report disclosure," reported inaccurate information to the credit bureaus, and damaged Mr. Taggart's character.

"[The FDCPA] provides a remedy for consumers who have been subjected to abusive, deceptive, or unfair debt collection practices by debt collectors." Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 400 (3d Cir. 2000). "The FDCPA's provisions generally apply only to 'debt collectors.'" Id. at 403 (citing Pettit v. Retrieval Masters Creditors Bureau, Inc., 211 F.3d 1057, 1059 (7th Cir. 2000)). "Creditors – as opposed to 'debt collectors' – generally are not subject to the FDCPA." Id. Loan servicers are not "debt collectors" under the FDCPA unless the debt being serviced was in default at the time the servicer obtained it. 15 U.S.C. § 1692a(6)(F); see Dawson v. Dovenmuehle Mortg., Inc., No. 00-6171, 2002 WL 501499, at *5 (E.D. Pa. Apr. 3, 2002) (citing Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985)).

Wells Fargo is not a debt collector because the loan was not in default when Wells

Fargo obtained it. Because Wells Fargo is not a debt collector under the FDCPA, I will grant Wells Fargo's motion to dismiss counts 39 and 40.

**IV.** **Conclusion**

I will grant Wells Fargo's motion to dismiss for the following reasons.

- Counts 1, 2, 5, 6, 8, and 9 are barred by the RESPA statute of limitations;

- Counts 3, 4, and 7are dismissed because RESPA does not provide a private right of action for violations of section 2603;

- Counts 19 and 38 are dismissed because the letters were not qualified written requests;

- Count 10 is dismissed because Mr. Taggart signed a notice of right to cancel form;

- Count 11 is dismissed because it is unclear which disclosures Mr. Taggart alleges Wells Fargo failed to make;

- Count 12 is dismissed because Wells Fargo disclosed the payment schedule;

- Count13 is dismissed because Wells Fargo disclosed the total payment amount;

- Counts 15 and 16 are dismissed because Mr. Taggart failed to allege when, or by how much, the interest rate or amount changed;

- Counts 14 and 18 are dismissed because Mr. Taggart's time period for

rescinding the loan has expired;

- Count17 is dismissed because Mr. Taggart does not sufficiently allege a breach of contract claim;

- Counts 20, 21, and 22 are dismissed because Wells Fargo did not owe a duty to Mr. Taggart;

- Counts 23 through 36 are dismissed because the complaint failed to allege common law fraud, as required to state a claim under catch-all provision of the UTPCPL;

- Count 37 is dismissed because the complaint failed to state a claim under the FCRA; and

- Counts 39 and 40 are dismissed because the complaint failed to state a claim under the FDCPA.

An appropriate order follows.